Colcock, J.
delivered the opinion of the Court.
There is no ground of law stated as the foundation of a new trial; and it appears, that the testimony which was written, was delivered to the Jury on their retiring from the box. It cannot, then, be a sufficient reason to grant a new trial, that in some. particulars, the Judge may have mis-stated the testimony to the Jury; for they well knew that it was their province to decide on the weight of evidence; and it is a case in which the exercise of this power of the Jury was peculiarly necessary. There appears to have been a great deal of conflicting evidence, such, perhaps, as could not be reconciled. The case would then rest much on the character of the witnesses, with which it is presumable the J ury were well acquainted. In such a case it is sufficient if the Court are satisfied, that there has been sufficient evidence on which, to rest the verdict, and it is very obvious that this is the case. The four subscribing witnesses all swore positively, that the testator was in his senses when he executed the will, and assign reasons for this belief; suchas his refusal to leave legacies to particular persons who were mentioned by those about him, particularly, the young man Saul, who was called"his son; his asking to know the amount of the legacies which were left, and *449 causing the witness, Randall, who drew the to'make the calculation for him) his refusal to leave a legacy to the Synagogue in London, and saying that they had never acknowledged the receipt of a legacy, which had been sent to them by him, left to them by a dead brother) his having blotted the first will, and desiring that another should be drawn. But it is said, that this evidence of the subscribing witnesses, (who agree in all material fact^,) is contradicted by the positive oath of Saul Simons, by the circumstances which they mention; and lastly, by the testimony of other witnesses, to whom they gave a different relation of the occurrences of the night. The testimony of the young man, Saul, cannot be regarded, for Hyam Harris, who is pronounced an honest man by both parties, proved, that he heard this young man acknowledge he had done wrong, ask his uncle’s pardon) and when the witness said to him, F wonder how you would be tampered with at your years to do a wrong thing, he said he had been tampered with, and named the person who had seduced him. This is one only witness who positively contradicts the oath of the four subscribing witnesses, and no doubt his testimony was disregarded by the Jury. The circumstances which are relied on to prove that the subscribing witnesses were mistaken in their opinion of the sanity of the testator, are that he cried out during the night, murder, and desired them to look under the bed) *450 said they wished to rob him, and the like; which Lyon Levy, who drew the first will, and who is admitted to be witness of credit, states a similar conduct in the testator, when he was employed in drawing his will. Nay, he appears to have acted in this way from the first account we have of him; and it is not dilficult to account for this conduct. He was certainly much enfeebled by sickness; he had accumulated a large sum of money, and had in bed with him 6000 dollars, or thereabout, and under the bed a chest of valuables : accustomed, perhaps, to think of little else, his anxieties were increased by his situation, but certainly afford no evidence of insanity, It is said, that two of the subscribing witnesses are not to be believed, because they said at other times after the execution of the will, that he, the testator, was not in his senses when he executed the will. The first witness to the will is Randall. Mr. Thornhill and Mr. Baring have testified, that he told them that the testator was out of his senses; and intimated that he was to be well rewarded for drawing the will. To this is opposed the testimony of two witnesses, swearing that Rand,all is a man of good character, and his own oath denying that he ever told them so. The circumstances of the case, also, contradict the testimony of Mr. Thornhill and Mr. Baring, For a man who would be base enough to draw the will of a person, who he knew to be ineapable of making one, would scarcely be *451 so foolish as to publish the act. If gain was the object, this was surely the most effectual mode he could have pursued, to prevent himself from obtaining it. But the Jury were not trying the abstract question of Randalls credit. They, no doubt, called in the aid which he had acquired from the oaths of the other witnesses, and this was certainly sufficient to outweigh the testimony of Mr. Thornhill and Mr. Baring.
The testimony of Michael Simpson was attacked on the same ground. Brown and Coleman say, he told them that the testator was not in his senses, <or what amounted to that, and mentioned the time and place. Hyam Harris and Chapman Solomons say, they were present; the first declaring that he did not hear Michael Simpson say any such thing, and the last positively swears that he did not say so. Michael Simpson was called in after Broten and Coleman, and swears that he did not tell them any such thing; add to this, that Brown says, he is sure it was after January, and •he thinks after February, and that this witness was sworn to before the Ordinary in February, and there cannot be a doubt remaining that can affect the credit of Simpson. The testimony of the attending physicians, it was said, was sufficient to contradict that of the subscribing witnesses. The greatest respect is due to it, both on account of the skill and reputation of these gentlemen; but it seems that they differ: Dr. Rammy thinks the deceased could not have had a lucid interval on *452 the night in which he executed the will; Dr. Glover is not positive, but says, in an interval of . 1 J sixteen hours, there may have been a great change for the better. Such things occur. * The lucid interval of Monday morning was sudden and surprising. The medicine he had been taking was stimulant as well as the wine. Lucid intervals may be produced by stimuli as often as they are administered, provided there is sufficient aptitude to receive them; from which it clearly follows, that such an interval may have occurred; and if so, the testimony is not directly contradictory. A great variety of circumstances were introduced in testimony of a minor consideration, which I shall pass unnoticed; one excepted — it was proved by some of the witnesses that the testator expressed a dislike or aversion to his brothers. There was a great deal of testimony to oppose this: the letters which were written by the deceased to his brothers, and the evidence of Col. Magtoood and Mr. Fraser, who testify that they had been seen together in apparent friendship; but this, though much relied on, is certainly an unimportant circumstance, had it been established; for it is very common, we know, in the situation of the testator, to feel a returning affection for relatives with whom they may have had little differences; nor can it be considered as improper in those who were present, to avail themselves of this opportunity of returning affection, to induce the man to make *453 a disposition of his property, which it must be conceded was more proper than the first. It is only to be regretted, that they were not able to prevail on him to leave some part of his ty to his son. Upon the whole, then, the verdict appears to be well warranted by the facts. I arn, therefore, of opinion, that the motion should be rejected.
Prioleau and Richardson, for the motion,
Keating L. Simons, contra.
The other Judges concurred.